Her third case this morning is No. 231455, MacroAir Technologies, v. Delta T. Okay, Mr. Maloney. Good morning. May it please the Court. The inventor of the 588 patent improved on the design of large commercial-scale ceiling fans. The inventor came up with a design that is very durable, strong, and resists all the forces involved in these systems, but also allowed for the removability of the arm members that attach the central rotating hub to the fan blades themselves so that when those arm members are worn, they can be easily replaced without having to replace the entire hub. The solution involved a hub that has a number of slots in it. The arm members are positioned within the slots and fastened to the hub in those slots. I can assume we're very familiar with the case. Sure. Just go over to your argument. The Board erred in finding that Claim 15 invalid based on Madsen fundamentally for three reasons. Two are claim construction, and one is really just a fundamental failure to address what the claim actually requires, and that's where I'm going to start. The Board found that Madsen renders Claim 15 obvious without ever making any findings that Madsen's disclosed fan assembly allows for the removability of the fan blade mounting arms. There weren't two arguments presented by the petitioner below, right? There was one that was Madsen teaches the claim limitation of the arm member being detachably secured in the openings, and the other one was that I think there was lots of expert testimony as to why one of Ordinary Scale New York would have been motivated to modify the arm members so that they would be detachably secured. So some of your arguments to me sound as if you're ignoring KSR and suggesting that a person of Ordinary Scale New York, you know, is an automaton. You know that line of thinking, you know, I mean, we're talking about modifying Madsen. Even assuming that Madsen, you know, doesn't teach the detachable limitation, there's five different reasons provided in the expert report, I mean expert testimony, for why it is that one of Ordinary Scale New York would have modified it. So why isn't that enough right there? Why do we have to look at, you know, all the different, you're kind of making these specific mechanical arguments that don't make much sense to me. Well, the reason, Your Honor, is we have to look at all of those arguments and all of the motivation evidence that was submitted in light of what the actual modification was that the petitioner was arguing for, and we have to get into the specifics of the mechanical assembly of Madsen because in that assembly, the hub member, and we have to look at the fact findings that the board made. The hub member, according to the board's findings, includes that entire assembly in the middle, the top plate, the bottom plate, the disc that allows for rotation of the arms, the crank arm and crank pins, which is part of the rotating device, and those two components called bearing housings. The arms are in the bearing housings and can rotate because the bearings allow for the rotation. The first argument from the petitioner was there are unlabeled fasteners that secure the bearing housings to the top and bottom plates. And argument number one was a person of ordinary skill would have understood those to be removable fasteners, essentially an anticipation argument. That's not the argument that was adopted by the board. And the second argument was if those fasteners are not essentially inherently removable, a person of skill would have understood it would have been obvious to make those fasteners removable, screws or bolts and nuts. That's as far as their argument went. That's as far as the petition went and as far as the expert report went. Our point is making those fasteners removable, which is the obvious modification that the board accepted, only at most would make the bearing housings removable. The claim requires that the arm members be removable without damaging the remainder of the hub. Now, we should look at the findings that the board did make. The board clearly found that Madsen's arm members. Do you want to point to a particular page? I will, Your Honor, yes. At appendix APPX 31 through 34, there's a discussion of Madsen and the arm members are identified at APPX 33-34 as being Madsen's mounting shafts 48. That's the arm member, mounting shaft 48. That's the piece that has to be removable per the claim without damaging the remainder of the hub. The board made specific findings of what is the hub member. At APPX 21, the board tells us that the hub member of Madsen is hub 24. That is that entire central apparatus in figure 3 of Madsen. So your argument is that the hub is damaged when you remove element 48 because you also have to remove parts of the hub? Not because you have to remove parts of the hub, Your Honor. You have to take them apart. Because there's no disclosure in Madsen, nor was there any evidence provided that these components can be taken apart. The hub includes, according to the board's findings, the hub includes the top plate, the bottom plate, the disc, the bearings and bearing housings. Why can't they be taken apart? I'm sorry, Your Honor? Why can't they be taken apart? Because they're welded together. You have an arm member. There's a perpendicular component called the crank arm that has a pin, and the crank arm and pin are connected to the arm member. That apparatus in turn is connected to the disc. It was required to meet the claim. So you're saying it wouldn't have been obvious to substitute another kind of attachment mechanism in place of a weld? There was no argument or evidence regarding the nature of the connection between the arm member, the mounting shaft 48, and the crank arm and the crank pin and the group disc. That was the petitioner's burden. There was no evidence that it was welded? I'm sorry, Your Honor? There was no evidence that it was welded? The reference is silent. The reference shows fasteners in a number of other. . . We don't know that, though. Well, it's the petitioner's burden to show. . . In other words, we don't know whether it was welded? Our expert, Dr. Paulus, put in evidence that it is a welded joint. He relied on the fact that there are no fasteners. What did their expert say? Their expert didn't address this in the petition in his initial declaration whatsoever. Their expert stopped at where I began. All their expert, Dr. Sheard, said. . . He has a second declaration, right? Does the second declaration of Dr. Sheard address this? Yes. The second declaration submitted in the reply brief, for the first time, addresses what should have been addressed in the petition. Dr. Sheard says he admitted in his deposition that we don't know the nature of the connection between the arm number 48, the shaft number 48, and the crank arm or the crank pin. He admitted in his deposition Madsen doesn't teach the nature of that. He then offered opinions that it would have been obvious to modify Madsen to make that connection removable. That's a brand-new obviousness theory that was never in the petition. Did you argue before the PTAB, and did they agree, that this was a new argument? I can't remember. There's been a lot of cases today. Yes. We absolutely. . . And the board said, no, this is not a new argument. No. It's responsive. Is that right? No. The board. . . We argued that it was a new argument. Uh-huh. We had argued prior to that that in order to remove the arm number, one would have to disassemble the arm number from the crank arm and the pin and disassemble the pin from the groove disc and that there was no evidence of the nature of those connections or that they were separable without damaging. Then came the reply with Dr. Sheard's brand-new opinions about the nature of those connections. The final written decision doesn't address any of Dr. Sheard's belated opinions in the reply. I think the board appropriately realized those are brand-new obviousness arguments raised for the first time in a reply. Does the board say that? No. The board is completely silent in this regard. The board does not address. . . . . . cite to or rely on any of Dr. Sheard's belated opinions about the nature of his connections. Those weren't Dr. Sheard's opinions about how they were welded and that couldn't be changed. Dr. Sheard's opinions were in his second declaration, which are. . . and his opinions specifically, Your Honor, about removal of the mounting shafts and separating of the crank arm and the crank pin and the groove disc, 985 to 990. . . Notice? In that. . . Give me a page. Tell me where he said this. He says at. . . He says at 1002, paragraph 50. 1002? Paragraphs 49 and 50. He interestingly says that removal of the mounting shaft would also require removing the crank arm and the crank pin. Can you tell me which paragraph you're pointing to? Paragraph 49, Your Honor. Okay. Thank you. Paragraph 49, that's a direct acknowledgment by Dr. Sheard that removing the arm would require removing the crank arm and the crank pin as well. The crank arm and the crank pin are part of the hub, Your Honor. What does he say couldn't be done? The claim requires the arm be removable from the remainder of the hub. The board found that the crank arm and the crank pin are part of the hub. That means the arm has to be separable from the crank arm. Where does your expert say these are welded and you couldn't change it? Our expert says that in his declaration. . . What is your expert saying? This is at Appendix 1281 through 1283. This is Dr. Paul's supplemental declaration. He says crank arm 36 is welded to the mounting shaft 48. Crank arm 36 cannot be removed from the rest of the mounting shaft 48. An important point here. . . But that's not the same thing as saying you couldn't change from a weld to a detachable connection. That issue was never raised, Your Honor. Okay, but he doesn't say that, right? He says it's welded. The reason he doesn't say it is because it was never raised by the petitioner. He said that you could change from a weld to a detachable connection, right? He didn't address whether it could be changed to a detachable connection. You are correct. It is not our burden to show. . . But their expert came in and said it could be. Their expert came in in his reply declaration and said it could be. But the important point is the board did not rely on any of Dr. Sheard's reply declaration on these issues. The board confined its final written decision to the theory set forth in the petition, which was limited to removing the fasteners that hold the bearing housings and only go so far as to show that the bearing housings themselves could therefore be removed. The board made specific findings that there are all these other components of the hub, and the board specifically found what the arm member was, the shaft 48. Therefore, the board was required to make findings and explain its analysis of how the arm member itself could be removed without having to break a connection. The board made no such findings. It would have been entirely improper to have relied on Dr. Sheard's opinions for the first time in a reply brief that didn't say that those connections are removable. He said that it would have been obvious to modify Matson in additional ways to make those connections removable. Dr. Sheard, in fact, acknowledged that they're not removable in Matson because he said to remove the arm, you'd have to remove the arm with the crank member, with the crank arm, and with the pin. So this was the petitioner's burden. The law is clear that they have to prove their case in the petition. They did not do so. They had this confused argument that removing the screws would allow the bearing housings to be removed, when the claim clearly requires removing the arm members. The claim has nothing to do with removing a bearing housing. And the whole point of the invention is that when an arm member wears out, you want to be able to remove just that component, separate it from the remainder of the hub, without damaging the hub, and replace the worn arm with a new arm. And so this entire proceeding got off on the wrong track, because in the petition all they showed was that it would have been obvious to make these screws removable so the bearing housings could come out, and then they conflated that issue with the relevant issue of whether the arm members could be separated. And when you look at the fact findings that the board did make, it's very clear what the board found to be the arm member, what the board found to be the hub components, about six or seven components comprising this hub. And so it's very clear, therefore, that the invalidity theory required showing that those shafts, 48, could be removed from the crank arm and the crank pin, and that the crank arm and the crank pin could be removed from that disc in the center. The board, in fact, made another finding that it was the engagement between the pin at the end of the crank arm and the disc that keeps the arm from flying out of the hub when the hub is rotating. That is another finding that is contrary to any notion of the arm being separable from this hub. It is permanently attached to the hub so that it doesn't fly out. I see I'm out of time, unless there's any other questions. Thank you, Your Honor. Mr. Burke. Good morning, Your Honors. May it please the Court. John Burke for Petitioner, Appellee Delta T. The board found below, as McElroy concedes now, that it would be obvious for one of ordinary skill in the art to modify MADSEN to make the fan blade supporting members removable. Judge Scholz, you acknowledged in the opening arguments there were at least five separate reasons put forth by Petitioner's expert why that modification would be desirable. And the board adopted that and extensively discussed how it credited Petitioner's expert for all of those reasons, being able to access, service, and replace the bearings contained in the bearing housing that will wear out as MADSEN is used. So would they say the board didn't credit the testimony about replacing a weld with an attachable connection? Your Honor, I would disagree with that. The board did actually cite to Dr. Sheard in terms of looking at Dr. Sheard's testimony that it was irrelevant whether or not the crank arm and crank pin were removably attached from the arm member. Contrary to what McElroy's counsel said a moment ago, the board expressly found that the crank arm and the crank pin are additional elements that don't line up with any of the recited elements of Claim 15. The board stated first that they're not the arm members, but in that very... So what if they're not required by the patent? They're there in the prior art reference. And to make the modification, you'd have to take account of the fact that they are there. Correct, Your Honor, but Dr. Sheard testified in his supplemental opinion that it would be obvious to modify those elements because MADSEN is silent. There's no teaching in MADSEN that it's a permanent connection. And as Dr. Sheard testified in his supplemental opinion... So where do we find the board agreeing with that? The board agreed with that. I think to the extent the board did, Your Honor, the board said it was irrelevant. So I'm not sure the board agreed with Dr. Sheard so much as it's reasonable to conclude because all that's necessary here is that there's substantial evidence in support of the board's obviousness finding that Dr. Sheard's testimony was substantial evidence and the fact that MACRAWARE didn't emphasize that to the board below. It didn't come up at oral argument. And there's no dispute, I think, that once those fasteners, which the board found could be modified to be removable and MACRAWARE concedes it would be obvious to use removable fasteners to secure the bearing housing in place between the top and bottom hub. Once those are removable, there's no dispute that the bearing housing can be removed from the hub. And there's also, I think, based on Dr. Sheard's testimony, which the board did credit, no dispute that the center of MADSEN is a grooved disc. It's just a disc with an annular groove around the outside. MADSEN describes that disc as engaging the crank pin, not being attached to the crank pin, engaging the crank pin. And the paragraph of Dr. Sheard's supplemental report that the board cites to is where he goes on to say it clearly has to be a loose connection. It's not an attachment that restrains movement. It merely causes the crank pin to move up and down because that's necessary for MADSEN to rotate the fan blade support members. So the board credited that testimony, and the board credited Dr. Sheard's opinions in general that it would be obvious to modify MADSEN to make those arm members removable. And that's enough, Your Honor. If this Court agrees that there's substantial evidence to support that obviousness inquiry, there is no need to get into the mechanics, to get into all of the hypotheticals that the board could have addressed in more detail because this Court's precedent is clear. So long as there's substantial evidence, the fact finder could reasonably conclude that the board reached the right decision. That's enough. And if there's two competing conclusions that could be drawn, the fact that the board reached one and not the other is also enough. That's the very epitome of the type of substantial evidence necessary. So here, Your Honor, we would contend that that's exactly the case, and Dr. Sheard put in plenty of evidence. And even going back to the petition, McElroy understood that this was merely a refinement of the argument put forward in the petition. It wasn't a new argument, as the board found. It was merely clarifying in response to McElroy's arguments that removing those fasteners necessarily involved removing the bearing housing, and that once that's removed, the arm member itself is also removable. Next, Your Honor, again, I have to reiterate that because the crank arm and crank pin are additional elements, not part of the arm member, and we disagree. The board did not find them to be part of the hub member. The board said that the hub member was Madsen's hub assembly 24, including in addition to those openings in the bearing housing. When Madsen talks about hub assembly 24, and the board quotes this discussion, Madsen says the hub assembly is the top plate, the bottom plate, the driving flange, the bearings, and the bearing housing, not the crank arm, not the crank pin. Those all relate to the pitch control mechanism, which is a separate element of Madsen, and that supports the board's proper finding that the crank arm and crank pin are additional elements not required. So, therefore, it is, Your Honor, irrelevant whether or not those are removable from the fan plate support members, because if they're not, there's no damage to the hub, because they're not part of the hub member required in Claim 15. Next, Your Honor, McElroy also raises in its brief for the first time vertical structures in Madsen that purportedly would make it impossible to remove the bearing assembly. That's a red herring. That wasn't briefed by McElroy below. That argument was waived. All they cite to in support is questions asked during oral argument that were answered in oral argument a mere two pages later in the transcript. Turning to the claim construction, Your Honor, McElroy improperly tries to revisit the arguments it raised before the board, and the board discounted, and it's trying to import limitations into the claims. First, they tried to read detachably secured as requiring, or prohibiting, rather, that there be any rotation by the arm members. There's no support for this in a plain reading of the claim. The claim merely requires arm members that are positioned in the openings and detachably secured in that position. It doesn't recite fasteners. You mean that they're not going to go flying off the fan. Exactly, Your Honor. They're going to stay restrained with the fan during operation, and that's common sense. You couldn't have the fan blades spinning off the fan. It wouldn't work. That would go against the purpose of Madsen and the purpose of the 588 patent. And in construing that, McElroy says you need to look at the preferred embodiment, but it's improper to do so. And indeed, as the board found, the term securing is used in the specification to refer to elements that can rotate independently of one another. Just as you would say your tire is secured to your car, despite the fact that the tire rotates and the car does not, here you can have an arm member that's secured to the fan, regardless of whether or not it rotates. And the securing assembly the board credited supports that position in the intrinsic evidence. Finally, Your Honor, McElroy attempts to argue that the point of attachment has to be in the opening as well, that there needs to be fasteners there. Claim 18 disproves this. Looking at Claim 18, that recites fasteners that extend from below the plate through the arm member and above the plate. Claim 18 depends from Claim 15. So not only does claim differentiation apply, it shows that Claim 15 can't be read narrower than Claim 18. For all those reasons, Your Honor, because there's substantial evidence and because the board properly construed detachably secured in the openings, its finding of obviousness should be affirmed. If there are no further questions. Okay. Thank you. Thank you, Your Honor. Mr. Maloney, you have two minutes. Sir, Your Honor? Two minutes. Thank you. First of all, the board did not find that the crank arm and crank pin are not part of the hub assembly. In fact, it found just the opposite. It clearly articulates the hub assembly. The hub is including the crank arm and the crank pin. It made the point that the crank arm and the crank pin. Do you want to give us a cite for that? I'm sorry? Do you want to give us a cite for that? Sure. Yes. At APPX 20, the very pitch control mechanism that Counsel just said was not part of the hub, the board says just the opposite. It says in Figure 3 also shows that part of the hub assembly that permit rotation of the fan blades. This includes, lists a bunch of components including the bearings, the bearing housings, top and bottom hub plates, pitch control rod 40, groove disc 42, crank arm 46, and crank pin 44. All of those components are part of the hub per the board's findings. I'm sorry. About where on the page were you? Page A20. Okay. I have it here. Right in this. Where it says Figure 3 also shows the hub that permit rotation. Yes. Okay. Those next two sentences. That's a finding of what is included in the hub. So you think the fan blade and the fan blade mounting shaft 48 are part of the hub? Well, the claim refers to the hub in a way that includes those components as a hub assembly and then refers to the fan blades and the mounting shafts and then the hub member that has the openings for the mounting shafts. So it's a little bit wonky there. But in terms of what the board said is the corresponding hub member, which is the claim language, of Madsen, it identified all of those components actually multiple times. Okay. Of course, it says a hub member in the claim and not a hub assembly, right? Yes. But the board also said at APPX 21, you see about halfway down page APPX 21, for example, for the hub member limitation, Madsen teaches hub 24. So hub 24 in Figure 3 is that entire assembly. 24 is a general reference number pointing to that entire assembly. And the earlier language I showed you on page 20 is going into more detail of what's included in hub 24. Hub assembly 24 includes all of those components. And this is a very different mechanism. The board said this was a comprising claim and that the crank pin and the crank arm were not part of the hub assembly. The board never said that the crank pin and the crank arm were not part of the hub assembly. The board was addressing a different issue of whether the language in the claim requiring the arm to comprise a constant cross-section. In that context, the board said because of the word comprise at the beginning of that specific limitation, we don't consider the crank arm and the crank pin to be part of the arm member. The board never said those are not part of the hub assembly. The board says right here on page 20 that they are part of the hub member. So there's some confusion going on there, but the board never said that those elements are not part of the hub or the hub member. And in terms of the point is that the crank arm and the crank pin are part of the hub member. Part of the claim. The arm member has to be detachable from the remainder of the hub without damaging it. There was no evidence that that arm member could be detachable from those components and, therefore, their theory fails. No, no. What you're saying is that their reply declaration did say that. Their reply declaration was not relied on whatsoever in the final written decision of this Court. No, no. You said there's no evidence, but there is evidence in the reply declaration. Let me, if I, my last point, Your Honor. This Court has to review the agency's finding.  You said there's no evidence, but, in fact, there is evidence. There's evidence in the record. Don't interrupt me. There is evidence in the reply declaration, right? Yes. Okay. May I make one point, Your Honor? Yes. That evidence was not relied on by the board, and this Court has to review the agency's decision based on the findings that were made. There were no findings made based on that evidence or any other evidence that these arm members could be detachable, and there's no explanation of how any of that evidence would show that those arm members are detachable. Okay. I think we're out of time. Thank you, Your Honor. Thank both counsel. The case is submitted.